UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAWRENCE GILLEN, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER TONY PARKER, et al., <br><br> Defendants. | Case No. 3:17-cv-00251 <br><br> Judge Trauger <br> Magistrate Judge Newbern |

To:   The Honorable Aleta A. Trauger, District Judge

**REPORT AND RECOMMENDATION**

Plaintiff Lawrence Gillen is a prisoner in the custody of the Tennessee Department of Correction (TDOC) at the West Tennessee State Penitentiary in Henning, Tennessee. Gillen brought this lawsuit to challenge an alleged violation of his religious freedom at his prior place of incarceration, the South Central Correctional Facility (SCCF) in Clifton, Tennessee. Proceeding pro se and *in forma pauperis*, Gillen sued TDOC Commissioner Tony Parker and two of his assistants, as well as the warden, assistant warden, and chaplain of SCCF, for denying him the opportunity to participate in the observance of Ramadan, a month-long period of fasting during daylight hours that is one of the five pillars of Islam. *Wall v. Wade*, 741 F.3d 492, 501 n.14 (4th Cir. 2014). Gillen brings his claims under 42 U.S.C. § 1983, alleging violation of his religious freedoms under the First Amendment of the United States Constitution; the Tennessee Constitution Article I, Section 3; and the Religious Land Use Institutionalized Persons Act (RLUIPA). Upon screening of the complaint under the Prison Litigation Reform Act, the Court dismissed Gillen's

claims against all defendants except SCCF Chaplain Randall Runions. (Doc. No. 4, PageID# 24–25.)

Runions has now filed a motion for summary judgment (Doc. No. 25). The motion is supported by Runions's declaration (Doc. No. 25-1), a memorandum of law (Doc. No. 26), and a statement of undisputed facts (Doc. No. 27). Gillen did not file a timely response in opposition to Runions's motion or respond to the statement of undisputed facts. On November 22, 2017, the undersigned issued an order to show cause why she should not recommend that the action be dismissed for the reasons stated in the motion for summary judgment. (Doc. No. 31.) Gillen responded to the order to show cause with his declaration, supported by the affidavit of inmate Antonio Bonds. (Doc. No. 32.) The Court construes Gillen's declaration as an untimely response in opposition to the motion for summary judgment. Runions has filed a reply. (Doc. No. 36.)

For the following reasons, the undersigned RECOMMENDS that Runions's Motion for Summary Judgment be GRANTED and that this case be DISMISSED.

**I. Factual Background**

Runions's statement of undisputed facts is supported by his declaration (Doc. No. 25-1) and an excerpt from Gillen's interrogatory responses (Doc. No. 25-2). Gillen did not respond to the statement of undisputed facts and those facts are therefore considered established for purposes of summary judgment under this Court's local rules. M.D. Tenn. R. 56.01(g) (failure to respond). The undisputed facts as asserted in Runions's statement are as follows:

> At all times relevant to the allegations in the Complaint, Plaintiff was incarcerated at South Central Correctional Facility (SCCF). SCCF is operated by CoreCivic, a private corporation [that] contracts with the Tennessee Department of Correction (TDOC) to house inmates at SCCF. Before this lawsuit was filed, Plaintiff transferred to West Tennessee State Penitentiary in Henning, Tennessee.
>
> Defendant Randall Runions was and is the Chaplain at SCCF. As part of its contract with TDOC, SCCF is required to implement and follow TDOC policies and

procedures concerning religious programs and accommodations for inmates. At SCCF, if an inmate wishes to identify a religious preference, he must submit a written request to Chaplain Runions. When an inmate changes his religious preference, Chaplain Runions documents the change in the Tennessee Offender Management Information System (TOMIS), a computerized database for the TDOC. Pursuant to TDOC policy, an inmate may change his religious preference no more frequently than once a quarter.

Pursuant to TDOC policy, in addition to regular worship services provided to various religious groups, SCCF also provides extra worship services and group gatherings to accent special observances, religious holidays, and feasts. All special worship services and group gatherings for special observances, religious holidays and feasts, must be conducted in accordance with guidelines approved by the Assistant Commissioner of Rehabilitative Services for TDOC.

Every year, SCCF provides Muslim inmates the opportunity to participate in the Ramadan fast and in the Eid al-Fitr feast at the conclusion of Ramadan. Every year prior to Ramadan, the TDOC's Assistant Commissioner of Rehabilitative Services issues a memorandum setting forth the guidelines that must be followed by SCCF and other Tennessee facilities in offering Ramadan and the Eid al-Fitr feast to inmates.

Observance of Ramadan in 2016 lasted from early June to early July. The [Eid al-Fitr] feast occurred on or about July 7, 2016. On April 13, 2016, the Assistant Commissioner issued the guidelines for the 2016 Ramadan fast and the Eid Al-Fitr feast. In implementing and following the TDOC guidelines, SCCF only allows inmates who have identified their religious preference on TOMIS as "Black Muslim," "Mohammedan," "Islamic," "Muslim-Nation of Islam," "Muslim-Sunni," or "Muslim-not NOI or Sunni" to participate in Ramadan and the Eid al-Fitr feast.

Every year, inmates are informed of the policy allowing only inmates identified with an appropriate religious preference on TOMIS to be allowed to participate in Ramadan. One of the purposes of the policy allowing only inmates that have identified an Islamic religious preference in participating in Ramadan and the Eid al-Fitr feast is to maintain the order and security of the institution. By limiting participation, the policy prevents non-Muslim inmates from attempting to take advantage of participating in the Eid al-Fitr feast and receiving extra food. If the feast were open to all inmates, numerous inmates could attempt to receive the benefits of the feast even though they do not identify as Muslim. The policy further ensures the efficiency for SCCF in planning and distributing meals to inmates who truly follow and practice Islam and prevents the possibility of SCCF being forced to prepare extra meals for inmates who do not truly practice Islam but simply wish to take advantage of Islam's religious observances. At all times relevant to this matter, Defendant Runions adhered to the applicable policies and procedures concerning religious programs and accommodations for inmates.

> Plaintiff had no religious preference identified on TOMIS in June or July of 2016. Plaintiff does not follow "one true faith." Instead, he "stud[ies] all religions."[1] In June of 2016, Plaintiff asked Defendant Runions why he had not been allowed to participate in Ramadan. Defendant Runions reminded Plaintiff that pursuant to policy, only inmates identified as Muslim on TOMIS could participate in Ramadan and the Eid-al-Fitr feast and explained to Plaintiff that if he wished to participate, he would need to submit the appropriate request to him changing his religious preference. Defendant Runions never received a request from Plaintiff seeking a change to his religious preference.
>
> As the Chaplain for SCCF, Defendant Runions is not a policy or procedure maker for the TDOC or for SCCF. Defendant Runions does not have the authority to act in contravention to guidelines issued by the TDOC concerning allowing inmates to participate in Ramadan and the Eid al-Fitr feast.
>
> On or about June 14, 2016, Plaintiff filed a grievance at SCCF complaining that Defendant Runions did not allow him to participate in Ramadan. SCCF officials responded to Plaintiff's grievance on June 22, 2016 and informed Plaintiff that in order to participate in Ramadan, he would have to be identified appropriately on TOMIS.

(Doc. No. 27.)

Gillen has filed the affidavit of SCCF inmate Antonio Bonds in support of his response to the summary judgment motion. (Doc. No. 32, PageID# 172.) Bonds states that, after a Nation of Islam prayer service on June 3, 2016, he invited all attendees to sign up to participate with the Nation of Islam in the Ramadan fast. (*Id.*) Bonds states that Gillen signed his name to that list. (*Id.*) Bonds submitted the list to SCCF administration for approval, and it was returned to him with the word "no" written beside Gillen's name. (*Id.*) Bonds states that Gillen "was not allowed to fast, because his name was not listed as Nation of Islam on TOMIS." (*Id.*) Bonds states that, "[t]o fast with the Nation of Islam, you do not have to be a member of our community." (*Id.*)

---

[1] Gillen's full interrogatory response states: "I study all religions. I have not one true faith good. I am a seeker of true. I read the Holy Bible, the Qur'on, books on Buddhism. I have a book called Josephus about Jews belie[fs]." (Doc. No. 25-2, PageID# 134.)

The Court also considers the allegations of Gillen's verified complaint, which do not materially contradict the undisputed facts. In his complaint, Gillen states that, after signing up on Bonds's list to participate in Ramadan, he was not woken up on the day Ramadan began and therefore did not pray before the sun rose. (Doc. No. 1, PageID# 5.) Gillen states that he spoke to Runions about why he was not awakened with others observing Ramadan and Runions asked, "'Are you on TOMIS as a Muslim?'" (*Id.*) Gillen told Runions that he did not have to be registered to participate. (*Id.*) Gillen states that Runions told Gillen he did not know what he was talking about and walked away. (*Id.*) In an administrative grievance attached to his complaint, Gillen states that he "ha[s] been fasting for 2 years with an Islamic community of [his] choice" and "attend[s] the Nation of Islam's Jumu'ah services faithfully." (Doc. No. 1, PageID# 10.)

## II.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must prove the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether the moving party has met its burden, a court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stiles*, 819 F.3d at 848. A court must not weigh the evidence and determine the truth of the matters asserted but instead must "determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to judgment as a matter of law. *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted). To preclude summary judgment, the nonmoving party must go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (citations omitted). "A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (alteration in original) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. *Anderson,* 477 U.S. at 249–52.

This Court's Local Rule 56.01(g) addresses responses to statements of undisputed material facts filed with motions for summary judgment. It provides that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." M.D. Tenn. R. 56.01(g) (failure to respond). However, "[a] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). The court must instead examine the motion to determine whether the movant has discharged its burden of demonstrating the absence of a genuine issue of material fact. *Id.*

### III.   Analysis

The heart of Gillen's action is his claim that Runions violated his right to religious freedom when he did not allow Gillen to participate in Ramadan and the Eid al-Fitr feast because he had not registered a religious preference on TOMIS. (Doc. No. 1, PageID# 5.) Gillen does not dispute that, pursuant to SCCF policy, Runions would have allowed him to participate in these practices if he had taken that step. Instead, Gillen argues that he should be able to participate in the ceremonies without registering as a member of a particular religion.

#### A.   Gillen's Free Exercise of Religion Claims

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," although that right is limited by "the fact of incarceration" and "valid penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Gillen brings his claim that he has been denied his First Amendment right to the free exercise of his religious beliefs under 42 U.S.C. § 1983, which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Gillen also asserts a free exercise claim under Article I, Section 3 of the Tennessee Constitution, which "recognizes and protects the rights of its citizens to practice the religion of their choice free from state interference." *Decker v. Carroll Academy*, No. 02A01-9709-CV-00242, 1999 WL 332705, at *5 (Tenn. Ct. App. May 26, 1999).[2]

---

[2]   Although the Tennessee Constitution's free exercise provision is "broader and more comprehensive in its guarantee of freedom of worship and freedom of conscience" than that of the First Amendment, the analysis of Gillen's state and federal rights is substantially similar for purposes of this motion. *Decker*, 1999 WL 332705, at *5 (quoting *Carden v. Bland*, 199 Tenn. 665, 672 (Tenn. 1956)); *Wolf v. Sundquist*, 955 S.W.2d 626, 630–31 (holding that free exercise rights under Tennessee Constitution, like those protected by the First Amendment, are "subject to

7

Runions first argues that Gillen's desire to participate in Ramadan and Eid al-Fitr does not stem from a sincerely held religious belief. "Under § 1983, '[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)). "Only after a prison inmate shows a sincere belief that his or her religion requires the practice at issue does the court move on to determining whether the prison's actions restricting the practice are valid." *Id.* Ultimately, "[t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

Runions argues that Gillen's Muslim religious beliefs cannot be sincerely held because he engages in the practices of more than one religion. (Doc. No. 26, PageID# 141.) It is uncontested that Gillen "does not follow 'one true faith,'" and instead "'stud[ies] all religions.'" (Doc. No. 27, PageID# 156.) In his summary judgment response, Gillen states that he attends the Nation of Islam's Jumu'ah prayer services and Christian church services and studies Buddhism in his free time. (Doc. No. 32, PageID# 167.) Runions argues that these admissions defeat Gillen's claim because Gillen "cannot sincerely hold to 'all' religions." (Doc. No. 26, PageID# 141.)

Whether Gillen's desire to participate in the Ramadan fast and Eid al-Fitr feast is central to his religious practice or stems from a sincerely held belief is a question of fact. *Porter v. Caruso*, 479 F. Supp. 2d 687, 697 (W.D. Mich. 2007) (report and recommendation adopted by court).

---

reasonable control for the protection of others"). The Court will consider both claims in a single analysis.

Because doing so addresses an "intensely personal area," *United States v. Seeger*, 380 U.S. 163, 184 (1965), it is generally "not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez*, 490 U.S. at 699. As the Sixth Circuit holds, "a decision on whether a particular religious belief is sincerely held cannot generally be made in advance of a hearing allowing for the presentation of testimony." *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, *2 (6th Cir. July 30, 1997).

Runions offers no authority to support his assertion that subscribing to the tenets of more than one religion necessarily defeats a claim that a particular belief or practice is sincerely held, and the Court does not make that finding. *See Leebaert v. Harrington*, 332 F.3d 134, 137 (2d Cir. 2003) (considering religious discrimination claim based on sincerely held beliefs of plaintiff who "[did] not belong to any institutionalized religion" and held "religious beliefs which incorporate . . . the best from all religions"); *Gainer v. Cooper*, No. CIV A CV505-044, 2006 WL 2946061, * 3 (S.D. Ga. Oct. 13, 2006) (denying summary judgment on religious freedom claim of plaintiff who did not claim to be Muslim but practiced a religion that shared some of its tenets, including the Ramadan fast). Although Gillen does not directly state that Ramadan is a central or required practice of his religion, he has alleged facts from which a reasonable juror could reach that conclusion. Gillen affirms that he "ha[s] been fasting for 2 years with an Islamic community" and attends Muslim Jumu'ah services faithfully. (Doc. No. 1, PageID# 10.) While a reasonable juror might view the genuineness of Gillen's beliefs with skepticism, there is also evidence in the record from to find his desire to observe Ramadan central to sincerely held beliefs. Accordingly, this is a genuine factual dispute that cannot be resolved at summary judgment.

Even if Gillen's sincere beliefs require his participation in the Ramadan fast and Eid al-Fitr feast, however, those practices may be subject to regulation in the prison setting. The Court thus turns to the question of whether Runions's requirement that Gillen register as a Muslim on TOMIS to participate in the Ramadan fast and Eid al-Fitr celebration unduly restricts his guaranteed religious freedoms.

A prison regulation that "impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This is a deferential standard that recognizes the "inordinately difficult undertaking" of prison administration. *Berryman v. Granholm*, 343 F. App'x 1, 5 (6th Cir. 2009). To determine whether a prison regulation affecting religious freedom is reasonable, the Court considers four factors defined by *Turner*:

> "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at de minimis cost to valid penological interests."

*Berryman*, 343 F. App'x at 6 (quoting *Spies v. Voinovich,* 173 F.3d 398, 403 (6th Cir.1999)).

Gillen's primary argument appears to be that there is no TDOC policy that requires inmates to register as Muslim in order to observe Ramadan and celebrate Eid al-Fitr. (Doc. No. 32.) For support, Gillen relies on the statement of Antonio Bonds that "[t]o fast with the Nation of Islam, you do not have to be a member of our community"[3] and the fact that Runions has not identified

---

[3] The Court notes that this statement does not directly address whether an inmate has to register on TOMIS as Muslim to participate in SCCF's Ramadan and Eid al-Fitr observances.

a specific policy or regulation that articulates this restriction. (Doc. No. 32, PageID# 172.) Gillen, however, has filed TDOC Policy 118.01, which addresses religious programs. (Doc. No. 18, PageID# 70.) Policy 118.01 states that special religious observances, including religious holidays and feasts, may be conducted by the prison chaplain "in accordance with guidelines approved by the Assistant Commissioner of Rehabilitative Services." (*Id.* at PageID# 77.) Here, it is undisputed that Runions applies the registration requirement "[i]n implementing and following the TDOC guidelines" as set out by the Assistant Commissioner. (Doc. No. 27, PageID# 154 ¶¶ 12–15.)

Runions identifies several reasons for the registration policy, which are also undisputed for purposes of this motion: "maintain[ing] the order and security of the institution"; "prevent[ing] non-Muslim inmates from attempting to take advantage of participating in the Eid al-Fitr feast and receiving extra food"; "ensur[ing] the efficiency for SCCF in planning and distributing meals to inmates who truly follow and practice Islam"; and "prevent[ing] the possibility of SCCF being forced to prepare extra meals for inmates who do not truly practice Islam but simply wish to take advantage of Islam's religious observances." (Doc. No. 27.) The Sixth Circuit has found "controlling the cost of [a religious] meal program," "ensuring that only those with sincere beliefs participate in the program," and "maintaining discipline within the prison" to be legitimate penological interests in similar circumstances. *Berryman*, 343 F. App'x at 6; *see also Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (finding legitimate penological interest in maintaining discipline by removing inmate from kosher meal program after he did not observe kosher restrictions outside of meals); *Courtney v. Burnett*, No. 1:07-CV-1130, 2010 WL 549220, at *13 (W.D. Mich. Feb. 10, 2010) (finding legitimate budgetary and security interests in prison's requirements for participation in kosher meal program). The stated reasons for SCCF's policy regarding Ramadan and Eid al-Fitr similarly pass muster here.

Consideration of the registration requirement in light of the remaining three *Turner* factors also leads the Court to conclude that it is reasonable. Although Gillen was required to register his religion on TOMIS to participate in Ramadan and Eid al-Fitr, that requirement is minimal in comparison to what would be required by its removal. It is undisputed that it would impose a "weighty" impact on prison resources—the administrative requirements to administer meals on a different schedule for observing inmates and the cost of extra food for the Eid al-Fitr feast—if all inmates were allowed to participate in Ramadan and Eid al-Fitr without advance notice to the prison of their intent to do so. *Berryman*, 343 F. App'x at 6. More importantly, Gillen has not articulated any burden that the requirement imposes on him, other than the mere fact of registration. Nor has he articulated an alternative to registration that would better accommodate his rights at a de minimis cost to the prison's interests. *Turner*, 482 U.S. at 91. There is therefore no genuine issue of material fact on this record that the registration policy is not an unreasonable regulation under *Turner*. Summary judgment for Runions is therefore appropriate on Gillen's free exercise claims.

**B.     Religious Land Use Institutionalized Persons Act**

The Religious Land Use Institutionalized Persons Act (RLUIPA) "applies to prisons that receive federal funds and prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)). It is well settled that RLUIPA does not allow claims for money damages against state prison officials in their official or individual capacities. *Haight*, 763 F.3d at 570. Thus, Gillen's claims for "nominal damages of $20,000" and punitive damages under the statute cannot proceed. (Doc. No. 1, PageID# 6.)

That leaves Gillen's claims for "an apolog[y] letter from each defendant," for Runions to step down from his position, and to have "all part[ies] written up." (*Id.*) Runions argues that these claims—construed as claims for injunctive relief—are now moot because Gillen has been transferred from SCCF to West Tennessee State Penitentiary. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (finding RLUIPA claims for injunctive relief moot because inmate challenged only practices at his specific institution and not generally applicable regulations that would apply where he was then incarcerated). It is not clear from this record whether the registration policy applies generally to all TDOC facilities or whether it is an SCCF-specific policy implemented by Runions under TDOC guidelines. If Gillen is still subject to the requirement at his new facility, however, Runions, as the SCCF chaplain, is not an appropriate defendant to any resulting claims. Further, Gillen's request for an apology from Runions lies outside this Court's equitable powers. *See Lyvers v. Newkirk*, No. 1:15CV-P96-GNS, 2017 WL 2817676, at *3 (W.D. Ky. June 28, 2017) (collecting cases). Likewise, Gillen's requests that Runions step down from his position and be written up are also beyond the Court's authority. *Scott v. Haun*, No. 3:16-CV-P815-DJH, 2017 WL 2486357, at *2 (W.D. Ky. June 8, 2017).

Finally, were the Court to consider Gillen's RLUIPA claim on its merits, it could not succeed on this record. Gillen "bears the initial burden of showing that the challenged action substantially burdened the exercise of his religion." *Huddleston v. Wilson Cnty. Crim. Justice Complex*, No. 3:14-1552, 2016 WL 1366677, *3 (M.D. Tenn. Apr. 5, 2016) (citing 42 U.S.C. § 2000cc-2(b)). "Although not defined by RLUIPA, an action creates a substantial burden 'when that action forced an individual to choose between following the precepts of their religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (quoting *Barhite*, 377 F. App'x at 511) (internal

quotation marks omitted). Here, as in *Huddleston*, "[t]here is no evidence before the Court that [Gillen] has been forced to forego his religious beliefs, violate his religious beliefs, or refrain from worshiping" because of the SCCF registration policy. *Id.* As this Court has noted, "the Sixth Circuit has . . . found that an action that 'encumbered the practice of religion' but 'did not pressure the individual to violate his or her religious beliefs' did not constitute a substantial burden." *Turner v. Weikal*, No. 3:12-cv-0915, 2014 WL 347815, *8 (M.D. Tenn. Jan. 31, 2014) (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007)). "A burden is less than 'substantial' where it imposes merely an 'inconvenience on religious exercise.'" *Id.* (quoting *Konikov v. Orange Cnty.*, 410 F.3d 1317, 1323 (11th Cir. 2005)).

In this case, the requirement that Gillen change his designation in TOMIS from "no religious preference" to one of the applicable Muslim denominations is not a substantial burden upon his religious exercise. The record contains no evidence or argument that temporarily changing his religious designation would have rendered Gillen unable to pursue other worship services or religious studies at SCCF (or any other TDOC facility) while so designated or imposed any other burden. There is no question of fact on this record that the inconvenience of changing a TOMIS designation is not the kind of substantial burden on religious exercise that RLUIPA guards against. Accordingly, summary judgment for Runions is appropriate on this claim as well.

## IV. Recommendation

For these reasons, the Magistrate Judge recommends that Runions's Motion for Summary Judgment (Doc. No. 25) be GRANTED and that this case be DISMISSED.

Any party has fourteen days after being served with this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen days after being served with a copy thereof in which to file any responses to

said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of further appeal of the matters disposed of therein. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

    ENTERED this 20th day of February, 2018.

                                                           ALISTAIR E. NEWBERN
                                                           United States Magistrate Judge